Price, J.
The defendant in error has assumed to act under the authority conferred by Section 1277,- Revised Statutes, which is: “The prosecuting attorneys of the several counties of the state, upon being satisfied that the'funds of the county, or any public moneys in the hands of the county treasurer. or belonging to the county, are about to be, or have been, misapplied, or that any such public moneys have been illegally drawn out of, or withheld from, the county treasury, or that a contract in contravention of the laws of this state has been, or is about to be entered into, or has been or is being executed, or that a contract was procured by fraud or corruption, or that any property real or personal, belonging to the county is being illegally used or occupied, or is being used or occupied in violation of the terms of any contract, or that the terms of any contract or agreement made by or on behalf of the county are being or have been violated, or that any money is due the county, may apply, by civil action in the name of the state, to a court of competent jurisdiction, to restrain such contemplated misapplication of funds, or the completion of any such illegal contract not fully completed, or to recover back, for the use of the county, all such public moneys so misapplied or so illegally drawn out or withheld from the county treasury, or to recover, for the benefit of the county, any damages resulting from the execution of any such illegal contract, or to recover, for the b'ehefit of the county, any such real or personal *81 property so used or occupied, or to' recover, for the benefit of' the county, any damages resulting from the non-performance of tht terms of any contract, or to otherwise enforce the same, or to recover any such money due the county.”
This section enlarges upon the duties and powers of prosecuting attorneys, as defined and prescribed in former legislation on the subject. The original act, found in volume seventy Ohio Laws, page thirty-eight, was an act “to prevent the misapplication of county funds, and the completion of illegal and fraudulent contracts.” This act was amended April 25, 1898 (93 O. L., 408), and again amended and broadened May 12, 1902, as found in 95.0. L., 558, and as thus amended is the present Section 1277 above quoted, and which the prosecuting attorney claims authorized him to bring and maintain the action under review.
In order to determine whether this position is sound, we must consider the character and purpose of the petition, and if we find that the case there made does not come within the purview of the statute, the demurrer to the petition should be sustained and the petition dismissed, for the decision of the trial court overruling the demurrer to the petition was assigned as error in the circuit court, and also in the petition in error filed in this court.
Attached to and made a part of the petition filed by the prosecuting attorney, is a copy of the contract for the construction of sections seven and nine of the Royer ditch improvement. It is dated March 31, 1904, and recites that the work was sold on March 29, 1904, to James H. Loe,'for the *82 sum of $2,101.45, and that “in consideration of the premises, I, the said James Loe do hereby agree to and with the board of commissioners of said Seneca county, or whomsoever may be interested therein, that 1 will do and perform all the labor of constructing that portion of said improvement so sold to me as aforesaid in accordance with the specifications thereof,” etc.
The bond of $4,000 was conditioned for the faithful and timely performance of said contract. It was a contract to construct certain portions of a county ditch and was made with the county commissioners through the surveyor or engineer. While it was in some respects a public improvement, it was local in its nature, and affected only a small part of the count)'-.
• It appears in the petition that Loe, the contractor, proceeded to perform the work of constructing the sections awarded- to him, and before he had fully completed the same, at his request, the surveyor or engineer gave him certificates from time to time during the progress of the work, to the effect that Loe was entitled to certain amounts as compensation, and that finally the engineer or surveyor in charge of the work, gave final certificate and acceptance, which enabled Loe to obtain warrants for the full contract price. It is alleged that these were obtained through conspiracy and collusion with the engineer in charge, they being fully aware that the work was not completed, but only partially performed, and it is stated in dollars and cents, the extent of this failure to perform. For these amounts the prosecuting attorney asked judgment. For a more elaborate narration of the facts *83 relied on for recovery, we refer to the statement of the case.
It is argued by the defendant in error that the “money thus drawn out of the county treasury was “public 'money” — “public moneys in the hands of the county treasurer, or belonging to the county,” and that by said statute he is authorized • “to recover back for the use of the county, all such public moneys.so misapplied, or so illegally drawn out, or withheld from the county treasury,” — “or to recover for the benefit of the county any damages resulting from the non-performance of the terms of any contract * * * or to recover any such money due the county.” These words and phrases are taken from Section 1277, which measures the scope of his authority.
We test the correctness of the claim by considering some of the provisions of the statutes regulating the locating and constructing of county ditches. This legislation begins with Section 4447, Revised Statutes, and as to the questions we are investigating, it is the law’ in force when the Royer ditch was established in 1904.
Section 4447 provides for the locating of county ditches. The next defines the meaning of the word ditch, and makes a limitation of assessments for same according to benefits. Section 4449 provides that “when the improvement will drain the whole or a part of any public or corporate road, or a railroad, or will so benefit any such road that the traveled track or road-bed thereof will be improved by its construction, there shall be apportioned to the county, if the road is a state, county, or free turnpike road, or to the townships if a township *84 road, or to the.- corporation,. if a corporate road or railroad, a proper share of the costs and expenses thereof, as hereinafter provided.”
Section 4450 authorizes application for such-ditch by land-owners to be benefited, and also by “the trustees of any original surveyed township owning land granted by congress for the support of common schools, or the infirmary directors of any county may make such application and file the petition and bond provided for in this chapter.” Sections 4451 and 4451 a prescribe what the petition shall contain and the character of the bond to be filed and notice given. ■ Section 4452 provides for the hearing of the petition and the findings that may be made. If the commissioners find against the improvement, the petition must be dismissed at the costs of the petitioners. If they find for it, a survey and plat must be made as required by Section 4454. They order the surveyor or engineer to report assessments according to Sections 4455 and 4456. The apportionment made by the engineer may be changed by the commissioners, and if benefited parties are omitted, they may be brought into the proceeding and assessed a part of the cost and expense,, as stated in Section 4459.
Section 4460 authorizes application for compensation and damages by persons or corporations whose lands are taken or affected in any way, and the next section provides for the allowance of such compensation and damages. The latter part of the section1 (4461) provides that “when the allowance for compensation and damages is fixed and determined as provided in this section, the commissioners-shall consider and determine according *85 to their best knowledge and judgment, the proportionate benefits to accrue from the construction of the proposed improvement. If they shall find that the public health, convenience or welfare will be promoted by said improvement, and that the samé is of sufficient importance to the public, cause the damages and compensation which. have been assessed to be paid out of the county treasury, they shall order the same to be so paid; or they may order a portion thereof to be paid by the county and the remainder by the benefited land-owners, as they may deem just and equitable.”
We pause here to remark that there is nothing in the petition or in the record to show that any claims for compensation and damages were filed with the commissioners, or that the county paid any part of such claims, if any were presented.' But the section last quoted proceeds to provide that where “such improvement is not of sufficient importance to the public to cause such damages and' compensation, or any part thereof to be paid by the county, they shall fix and determine the proportionate amount thereof which should be paid by the several land-owners benefited by the improvement; in either case the commissioners shall direct the auditor to issue an order on the county treasurer to each of the several claimants to whom compensation or damages was allowed for the amount due, and to enter on the ditch duplicate the amounts assessed against the several benefited land-owners for the payment of such compensation and damages, payable in the same ratio and manner as other assessments, and to bé collected as' other taxes.” • . ■
*86 This language seems plain to the effect that where the improvement is not of sufficient importance to the public to justify the payment of all or part of the compensation and damages out of the county treasury as a charge against the county, the orders issued, for damages and compensation are paid by the county treasurer and the amounts are apportioned and entered on the ditch duplicate against the benefited land-owners, to be collected from them as other taxes. Therefore, the land-owners reimburse the county for such outlay. But as we have observed, we are not advised in this case that any such claims were paid by the county treasurer, and we need not pursue this point further. As yet we have not found in the petition or any part of the record that any county or state money was withdrawn by Loe.
Many subsequent sections provide for exceptions before the commissioners, for appeal from certain orders and findings of the commissioners, and for the mode of trial on appeal. These sections are not important here, as no appeal was taken in the present case.
Sections 4475 and 4475a provide when and how the commissioners shall sell the work of construction of the ditch, and the following section, Section 4476, for sale of work, and it authorizes the county surveyor to make contracts with bidders to whom work is awarded and to take bonds for the faithful performance of the work contracted for, and it provides that r‘the contractor for each job shall be liable on his bond so given for all delays after the expiration of the time named therein for the completion of the job, and *87 for the payment of all damages which accrue by reason of the failure to complete the job within, the time required in the contract therefor, and for the' payment of all labor and material and for all debts incurred in the performance of this contract. All claims under this act shall be filed with the county surveyor before the expiration of the time for the completion of such contract.”
Section 4477 provides that the work of construction shall be under the supervision. of the county surveyor, and he is authorized to make certificates during- progress of the work for a certain per cent, of the work completed, upon which the contractor may receive warrants and obtain partial payment, etc. These payments shall be made by the treasurer out of any funds applicable to such purpose.
Section 4478 provides for a re-sale of uncompleted work at the expense of the contractor, and that anyone who has sustained damages in consequence of non-performance of such work “may bring suit for •damages against any contractor failing to perform his contract, or upon the bond of such contractor, and recover damages as provided by law in other cases.”
Section 4479 is of first importance now, for it directs the rhaking of assessments to pay for the work. It reads: “When the working sections of the improvement are let, as hereinbefore provided, and the costs and expenses of location and construction and all compensation and damages are ascertained, the commissioners shall meet . and determine at what time and in what number of assessments they will require the same to be paid, *88 and order that assessments, as made, by them, be placed on the duplicate accordingly, against all the lots or lands, or corporate roads or railroads assessed ; they shall also determine whether they will issue bonds of the county to raise the money necessary to pay such costs and expense,” etc.
Section 4480 directs that “when the commissioners make an assessment, they shall cause an entry to be made, directing the auditor to make and furnish to the treasurer of the county a special duplicate with the assessments arranged thereon, as required by their order, and the auditor shall retain a copy - thereof in his 'office, and all assessments shall be collected and accounted for by the treasurer as other taxes;” the remainder of the section regulates proceedings where the assessments are not paid for a year after due, etc.
If bonds are issued to construct the ditch, Section 4481 directs how the assessments of benefited lands, lots and roads shall be made to pay for the bonds. There is one more section — 4501—which is of prime importance for a thorough understanding of preceding sections. It reads: “The commissioners shall, annually if necessary, at their March session, levy upon the - grand duplicate of the county a. tax not to exceed five-tenths of one mill on the dollar, sufficient to pay for the location and-construction of such portions of the respective ditches located by them, or by the commissioners' of two or more counties as may be apportioned to the county, and they -shall pay out of any fund applicable to stick purposes, any sum assessed upon land owned by the county. In all proceedings which have been, or shall be commenced under this *89 chapter wherein compensation and damages, or either, has been or shall be awarded by the commissioners under section forty-four hundred and sixty-one, or by a jury on appeal to the probate court, an amount of the county general ditch improvement fund in the county treasury, sufficient to satisfy the same, shall be set apart and held as a deposit of money to secure and be subject to the payment of the same; and if in any case there shall be an insufficient amount of such ditch improvement fund unappropriated in the treasury for such security and payment, then an amount of the general revenue fund in the county treasury, equal to such deficiency, together with such an appropriated residue of said ditch improvement fund, if any, shall be set apart and held for said purposes; and the commissioners shall, before the property for which compensation and damages has been awarded, shall have been actually taken and occupied for the purpose of its appropriation, order the auditor on demand of the corporation or person entitled thereto, to draw his warrant on the county treasurer for the amount of such award, stating therein on what fund it is drawn, and deliver the same to the party so entitled, which shall be paid out of the county treasury; and all sums so paid shall be apportioned, assessed and reimbursed to said funds from the collection of assessments for compensation and damages as provided in sections four thousand four hundred and seventy-nine and four thousand four hundred and eighty of, the Revised Statutes
While it does not appear in this record that any compensation or damages was allowed for lands *90 taken for the ditch improvement, and paid out of the county treasury, yet the above section informs us that had such payments been made from the county funds or county ditch fund, the same must be reimbursed by the assessments made upon the property of benefited land-owners, corporate or public roads, so that the burden rests at last upon such owners and public and corporate roads as are assessed for the improvement. So here, if the money drawn by Loe on the surveyor's certificate and warrants of the auditor may in part have been drawn out of a county ditch fund, it was a fund to be supplied and reinforced by the assessments made for the improvement, and therefore it was a special fund no doubt collected on a special duplicate required by Section 4480.
We have thus journeyed through these numerous sections of the county ditch law to learn the method and the means whereby county ditches are located, constructed and paid for, and we learn from their consideration, that the commissioners, county surveyor and the county treasurer, are mere agencies supplied by the statute for the parties interested in the locating and construction of the improvement, which does not concern the county or state at large, but the locality specially benefited.
It is true that the commissioners assessed some of the expense of construction on each of two townships and* another portion on the county, because, no doubt, township and county roads in that locality were benefited - by the construction of the ditch. In that respect the townships and county stood in the same relation thereto that was borne by benefited' land-owners.
*91 This court has reported numerous cases wherein ditch legislation has been construed. In the list is Ohio, ex rel. McConahey, v. Seamon, Treas., 23 Ohio St., 389. In that case the court was considering the township ditch law, passed May 6, 1868 (65 O. L., 155). Several of its provisions resemble the statute in force when the Royer ditch was located and constructed. To give the -point to the decision, we quote from Section 13 of that act: “Immediately after the sale of any such sections or parts of sections, as provided for in the twelfth section of this act, said trustees shall certify to the auditor of the county the amount each section sold for, adding the proportionate amount of cost and expenses of such sale, together with a correct description of each piece of land, and said auditor shall place the same on the duplicate to be collected as other state and county taxes are collected. As soon as such work shall, be completed in conformity with such sale and to the satisfaction of said trustees, said trustees shall certify the amount due to each person to the auditor of the county, and said auditor shall draw orders for the payment of such amount out of the county treasury,” etc. One Kdhn completed several jobs of ditching -under that act, and pursuant to said Section 13, he received an order for each job completed payable out of the county treasury. He sold and transferred these orders to the relator McConahey. These ditch jobs had been certified to the county auditor, to which was added in each case the proportionate share of costs and expenses of the sale of the work and the same had been placed on the duplicate. Thereafter McConahey presented *92 said orders to the county treasurer and demanded payment, which was refused. The treasurer had sufficient county funds to pay all of said orders, but no funds had been collected upon the said assessments. McConahey sued out an alternative mandamus, to which the treasurer responded with the foregoing facts.
This court held in that case as follows: “Section 13 of the act of May 6, 1868, provides that orders drawn pursuant to its provisions by the county auditor shall be payable out of the county treasury. It designates the place of payment, but does not specify the fund out . of which such payment is to be made. It, however, prescribes an assessment by which the sums so required may be collected into the treasury. The legislature has directed the levy of taxes separately, for county purposes, for bridges, roads, etc., each to be kept distinct from the other; and the disbursements of moneys raised for one purpose, in payment of obligations contracted for any other object, is forbidden, save in cases expressly named by statute. It is not claimed by the relator that any part of the bridge or road funds can be Used in payment of the orders held by him, but he urges that money collected for ‘county purposes’ may be so used. We think not. While the construction or maintenance of public roads and bridges is by express enactment excluded from ‘county purposes,’ it can hardly be maintained that the legislature intended to include within them labor on a local drain.” The writ was refused and he could not be paid out of county funds, because his claim was against a special fund when it should- be collected from *93 the assessments. And when collected, it did not become “public moneys” or “moneys belonging to the county,” as mentioned in Section 1277, Revised Statutes, but a special fund to pay for a local improvement. The same principle of construction must prevail in characterizing the funds alleged to have been drawn out by Loe. While the law in force when the Royer ditch was made is more elaborate in scope and details than the said act of May 6, 1868, it is but an enlargement of the same scheme for paying for ditch improvements, whether located by township trustees or county commissioners.
There is another reason why the prosecuting attorney must lose his contention. He makes it appear in his petition and in his proofs, that Loe had a valid contract for the performance of the two working sections, and had given an acceptable bond to secure performance; further, that the money he drew from the county treasury was drawn on warrants issued by the auditor, and the whole ground of complaint is, that he did not fully complete the contracts — did not excavate all the rock and earth in the path of the ditch. He received more than he was entitled to, it is alleged. If that is true, there is use for the contract and bond, and not a case for the prosecuting attorney under Section 1277, supra. If the work was not all performed as required, the ditch statute furnishes an ample remedy.
We think the relator has no authority under said section to bring and maintain the action under review. The trial court erred in submitting the case to the jury, and in charging the jury as to its duties under the averments of the petition.
*94 The judgments o£ the lower courts are reversed, the demurrer to the petition sustained and petition dismissed.

Judgment reversed.

Summers, C. J., Crew, Davis and Shauck, JJ., concur.